**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02026-WYD

WILDEARTH GUARDIANS,

      Petitioner,

v.

UNITED STATES OFFICE OF SURFACE MINING RECLAMATION AND
ENFORCEMENT, *et al.*,

      Federal Respondents.

---

**FEDERAL RESPONDENTS' MOTION TO SEVER AND
TRANSFER AND MEMORANDUM IN SUPPORT**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.    BACKGROUND .................................................................................................... 2

    A.    WildEarth Guardians' Prior Litigation ...................................................... 2

    B.    Background on Federal Coal Development ................................................. 5

        1.    Leasing under the MLA ................................................................. 5

        2.    State permitting ............................................................................. 6

            a.    SMCRA permitting ............................................................ 6

            b.    Other state permits ............................................................ 8

        3.    Mining plan recommendation/approval .......................................... 9

II.    ARGUMENT ....................................................................................................... 10

    A.    The Claims Against the Four Separate Mines Should be Severed Under Rule 21 .......................................................................................... 10

        1.    Severance is proper because none of the claims are part of the same transaction or occurrence and do not present a common question of law or fact.................................................... 11

        2.    Severance will not substantially inconvenience Petitioner .......... 12

        3.    There is no judicial economy in litigating all of the alleged claims in one suit ....................................................................... 13

    B.    Each of the Severed Claims Should be Transferred to the Judicial District Encompassing the Mine Where the Claim Arose ....................... 14

        1.    Petitioner's claims could have been brought originally in the judicial districts where the mines are located .............................. 15

            a.    Claims against Antelope Mine and Black Thunder Mine could have been brought in the District of Wyoming................................................................... 15

            b.    Claims against El Segundo Mine could have been brought in the District of New Mexico ............................ 16

        2.    The interest of justice favors transfer............................................ 16

i

a.      Petitioner's choice of forum is entitled to minimal consideration ................................................................... 17

b.      The local interest favors transfer because Petitioner's claims involve disputes over the management of lands located entirely in Wyoming and New Mexico ....... 18

c.      The other *Chrysler Credit Corp* factors are neutral or support transfer ............................................................... 21

III.     CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Airport Working Grp. v. United States Dep't of Def.*,
    226 F. Supp. 2d 227 (D.D.C. 2002) .................................................................. 17

*Am. Dredging Co. v. Miller*,
    510 U.S. 443 (1994) .......................................................................................... 18

*Bailey v. Union Pac. R.R.*,
    364 F. Supp. 2d 1227 (D. Colo. 2005) .............................................................. 17

*Bragg v. W. Va. Coal Ass'n*,
    248 F.3d 275 (4th Cir. 2001) ............................................................................... 6

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
    928 F.2d 1509 (10th Cir.1991) ..................................................... 10, 14, 16, 21

*Defs. of Wildlife v. Jewell*, Nos.
    2:13-000039, 2013 WL 6179953 (M.D. Tenn. Nov. 26, 2013)..................... 17, 18, 20, 21

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
    618 F.3d 1153 (10th Cir. 2010) .................................................................. 17, 18

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) .......................................................................................... 21

*Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*,
    464 F. Supp. 2d 1095 (D. Colo. 2006) .............................................................. 17

*Friends of the Norbeck v. U.S. Forest Serv.*,
    No. 10-cv-2164-AP, 2010 WL 4137500
    (D. Colo. Oct. 18, 2010) .......................................... 2, 4, 14, 16, 17, 19, 20, 21

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ...................................................................................... 3, 18

*Hodel v. Va. Surface Mining and Reclamation Ass'n*,
    452 U.S. 264 (1981) ............................................................................................ 6

*In re Permanent Surface Mining Regulation Litig.*,
    653 F.2d 514 (D.C. Cir. 1981) ............................................................................ 6

*Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior*,
    669 F. Supp. 2d 88 (D.D.C. 2009) .................................................................... 17

*Miller v. Insulation Contractors, Inc.*,
608 F. Supp. 2d 97 (D.D.C. 2009) ............................................................... 22

*Nat'l Wildlife Fed'n v. Alexander*,
458 F. Supp. 29 (D.D.C. 1978) .................................................................... 20

*Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*,
918 F.Supp. 343 (D.Kan.1996) .................................................................... 12

*Olenhouse v. Commodity Credit Corp.*,
42 F.3d 1560 (10th Cir. 1994) ..................................................................... 21

*Piper Aircraft v. Reyno*,
454 U.S. 235 (1981) ................................................................................... 14

*Preacher v. Wiley*,
2009 WL 6409350 (D. Colo. Nov. 20, 2009) ..................................... 10, 11, 12

*Ryan v. Tseperkas*,
2008 WL 268716 (E.D.N.Y. Jan.28, 2008) .................................................... 17

*S. Utah Wilderness Alliance v. Norton*,
315 F. Supp. 2d 82 (D.D.C. 2004) ..................................................... 18, 19, 20

*Safeco Ins. Co. v. City of White House*,
36 F.3d 540 (6th Cir. 1994) ........................................................................ 11

*Sierra Club v. U.S. Dep't of State*,
No. C 09-04086 SI, 2009 WL 3112102 (N.D. Cal. Sept. 23, 2009)................... 19

*Sporia v. Pennsylvania Greyhound Lines*,
143 F.2d 105 (3d Cir. 1944)........................................................................ 11

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)..................................................................................... 14

*Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*,
215 F.R.D. 621 (D. Kan. 2003)............................................................... 12, 13

*Texas Gulf Sulphur Co. v. Ritter*,
371 F.2d 145 (10th Cir. 1967) ..................................................................... 16

*Trout Unlimited v U.S. Dep't of Agric.*,
944 F. Supp. 13 (D.D.C. 1996) ............................................................... 19, 21

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)............................................................................. 14, 18

*Wildearth Guardians v. Jewell*,
  738 F.3d 298 (D.C. Cir. 2013) ........................................................................... 9

*WildEarth Guardians v. Klein*,
  No. 14-cv-112 (D.N.M. filed Feb. 7, 2014) ............................................... 1, 22

*WildEarth Guardians v. Salazar*,
  No. 10-cv-1133 (D.D.C. filed Jul. 1, 2010) ....................................................... 3

*WildEarth Guardians v. Salazar*,
  No. 10-cv-876 (D. Colo. filed Apr. 20, 2010) ................................................... 3

*WildEarth Guardians v. U.S. Bureau of Land Mgmt.*,
  2013 WL 524407 (D.D.C. 2013) ....................................................................... 2

*WildEarth Guardians v. U.S. Fish & Wildlife Serv.*,
  No. 12-CV-3085-AP, 2013 WL 136204 (D. Colo. Jan. 9, 2013) ...................... 18, 19, 21

*WildEarth Guardians v. U.S. Forest Serv.*,
  No. 1:11-CV-03171-AP, 2012 WL 1415378
  (D. Colo. Apr. 24, 2012) ......................................... 3, 14, 15, 16, 17, 18, 19, 21

*WildEarth Guardians v. U.S. Forest Serv.*,
  No. 11-cv-3171 (D. Colo. filed Dec. 6, 2011) ................................................... 3

*WildEarth Guardians v. United States Forest Serv.*,
  2015 WL 4886082 (D. Wyo. Aug. 17, 2015) ................................... 1, 9, 13, 22

*WildEarth Guardians v. United States Office of Surface Mining Reclamation & Enf't*,
  No. 1:13-CV-00518, 2014 WL 503635
  (D. Colo. Feb. 7, 2014) ........................................ 1, 2, 4, 10, 11, 12, 13, 18

*Wyndham Associates v. Bintliff*,
  398 F.2d 614 (2nd Cir. 1968) .................................................................. 10, 11

## Federal Statutes

5 U.S.C. §§ 701-706 ............................................................................................ 2

28 U.S.C. § 1391(e)(1) ....................................................................................... 15

28 U.S.C. § 1404(a) .................................................................................. 2, 14, 15

30 U.S.C. § 207(c) ............................................................................................... 5

30 U.S.C. § 1201 ................................................................................................. 5

30 U.S.C. § 1253 ................................................................................................. 6

30 U.S.C. § 1253(a) ................................................................................................ 6, 7

30 U.S.C. § 1254(a) ................................................................................................... 6

30 U.S.C. § 1271 ........................................................................................................ 7

30 U.S.C. § 1273 ........................................................................................................ 7

30 U.S.C. § 1273(b) ................................................................................................... 7

30 U.S.C. § 1273(c) ................................................................................................ 7, 8

30 U.S.C. § 1276(e) ................................................................................................... 6

30 U.S.C. §§ 181-287 ................................................................................................ 5

42 U.S.C. §§ 4321-4347 ............................................................................................ 1

**State Statutes**

N.M. Stat. Ann. §§ 69-25A-1 .................................................................................... 7

Wyo. Stat. Ann. § 35-11-101 .................................................................................... 7

**Rules**

Fed R. Civ. P. 21 ....................................................................................... 2, 10, 11, 12

**Regulations**

30 C.F.R. § 745.13(i) ................................................................................................. 8

30 C.F.R. Part 746 ..................................................................................................... 5

30 C.F.R. § 931.10 ..................................................................................................... 7

30 C.F.R. § 931.30 ..................................................................................................... 8

30 C.F.R. § 950.10 ..................................................................................................... 7

30 C.F.R. § 950.20 ..................................................................................................... 8

43 C.F.R. § 3425.1-1 ................................................................................................. 5

43 C.F.R. § 3425.3 ..................................................................................................... 5

48 Fed. Reg. 6912, 6912 (Feb. 16, 1983) ................................................................. 7

## **Other Authorities**

9 C. Wright & A. Miller, Federal Practice and Procedure § 2387  (1971 & 1990 Supp.)............ 10

H.R. Rep. No. 95-218 (1977)............................................................................................................ 6

WILDEARTH GUARDIANS,
   http://www.wildearthguardians.org/site/PageServer#.Vktxof_lu70 (last visited Nov.
   17, 2015) ............................................................................................................................ 12

## INTRODUCTION

Yet again, WildEarth Guardians ("Petitioner") has chosen to file suit in the District of Colorado challenging multiple out-of-state coal mining decisions, and this Court should again sever these claims and transfer each challenge to the respective district where the mine is located.[1] Federal Respondents do not contend that venue in this district is improper. Rather, Federal Respondents contend that strong local interests in resolving disputes over management of federal coal lands exist in Wyoming and New Mexico, which compel the severance and transfer of those claims to their respective district. In particular the interests of the States of Wyoming and New Mexico weigh heavily in favor of transfer because (1) the environmental and economic impacts of expanded mining would be felt most in the states where the mines are located; (2) most of the state and federal agency approvals and concurrences prerequisite to each Assistant Secretarial action occurred in the respective states; (3) Wyoming has now moved to participate as an intervenor in this case; and (4) this Court recently transferred related litigation to the District of Wyoming, the District of New Mexico, and the District of Montana under very similar circumstances.[2] *See generally WildEarth Guardians v. United States Office of Surface Mining Reclamation & Enf't*, No. 1:13-CV-00518, 2014 WL 503635, at *3 (D. Colo. Feb. 7,

---

[1] WildEarth Guardians challenges four distinct decisions made over a three-year period in Washington, D.C., by various Assistant Secretaries and Principal Deputy Assistant Secretaries for Land and Minerals Management of the United States Department of the Interior ("Interior"). Three of the four challenged mining approval plans pertain to mines located outside Colorado— two are located in Wyoming (specifically, Antelope and Black Thunder), and one is located in New Mexico (specifically, El Segundo). Pet. ¶ 3. Petitioner contends the four plan approvals violate the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 §§ 4321-4347, and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

[2] The District of Wyoming recently reviewed three similar challenges to coal leasing decisions that relied on similar environmental analyses at issue in the claims against the Wyoming mines, *see WildEarth Guardians v. United States Forest Serv.*, 2015 WL 4886082 (D. Wyo. Aug. 17, 2015), and there is currently a similar case pending review in the District of New Mexico, *see WildEarth Guardians v. Klein*, No. 14-cv-112 (D.N.M. filed Feb. 7, 2014).

2014) ("*WEG OSMRE Mining Plan Case")* (transferring related cases to their respective judicial districts). Thus, severing and transferring claims pertaining to the approval of the Wyoming and New Mexico mines would promote "the interest of justice" and the "convenience of the parties and witnesses." 28 U.S.C. § 1404(a).

Accordingly, Federal Respondents respectfully request that the Court sever Petitioner's claims, Fed. R. Civ. P. 21, and transfer three of the four claims to the judicial districts where the mines are located, 28 U.S.C. § 1404(a), as follows: (1) claims against 2013 Antelope Mining Plan Approval and 2015 Black Thunder Mining Plan Approval (both located entirely within Wyoming) should be severed and transferred to the District Court of Wyoming, and (2) claims against the 2014 El Segundo Mining Plan Approval (located entirely within New Mexico) should be severed and transferred to the District Court of New Mexico. *See WEG OSMRE Mining Plan Case* 2014 WL 503635 (D. Colo. Feb. 7, 2014); *Friends of the Norbeck v. U.S. Forest Serv*., No. 10-cv-2164-AP, 2010 WL 4137500, at *2 (D. Colo. Oct. 18, 2010).

## I.  BACKGROUND

### A.  WildEarth Guardians' Prior Litigation

Petitioner WildEarth Guardians has its principal place of business in Santa Fe, New Mexico. Pet. ¶ 8 (alleging that the organization is "based" there). Despite its New Mexico presence, this case marks Petitioner's second attempt in three years to challenge federal coal operations in its home-state by bringing a lawsuit in Colorado, and its fourth attempt in five years to challenge federal coal operations in Wyoming by bringing a lawsuit in Colorado.[3]

---

[3] Petitioner has also filed numerous challenges to Wyoming coal operations in the District of Columbia. In fact, one of these cases was recently decided in the District of Wyoming (i.e., Civil Action No. 13-cv-42) after first being filed in the District of Columbia. *See WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 2013 WL 524407 (D.D.C. 2013). On May 2, 2012, BLM moved to transfer that case to the District of Wyoming and the motion was granted. *Id*. at *3.

In 2010, Petitioner filed an action in this Court to compel the Secretary of the Interior ("Secretary") to respond to a petition for rulemaking, calling for a change in Wyoming coal leasing procedures used by the United States Bureau of Land Management ("BLM"). *WildEarth Guardians v. Salazar*, No. 10-cv-876 (D. Colo. filed Apr. 20, 2010). When respondents raised venue concerns, WildEarth Guardians voluntarily dismissed the action and filed a substantially similar action in the District of Columbia. *WildEarth Guardians v. Salazar*, No. 10-cv-1133 (D.D.C. filed Jul. 1, 2010).

The very next year, Petitioner filed an action in this Court challenging a decision of the United States Forest Service ("Forest Service") consenting to the BLM's leasing of federal coal tracts located in Wyoming, beneath Forest Service lands. *WildEarth Guardians v. U.S. Forest Serv.*, No. 11-cv-3171 (D. Colo. filed Dec. 6, 2011). This Court granted the Forest Service's motion to transfer the case to Wyoming, expressing support for the general legal principle of having localized controversies decided in the district where the controversies are located. *WildEarth Guardians v. U.S. Forest Serv.*, No. 1:11-CV-03171-AP, 2012 WL 1415378, at *3 (D. Colo. Apr. 24, 2012) ("*WEG USFS South Porcupine Lease Case*") (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947)).

In 2013, Petitioner filed another action in this Court asserting fifteen claims challenging the United States Office of Surface Mining Reclamation and Enforcement's ("OSMRE") approval of mining plans for seven mines located in Colorado (two mines), Montana (one mine), Wyoming (three mines), and New Mexico (one mine). *WildEarth Guardians v. United States Office of Surface Mining Reclamation & Enf't*, No. 1:13-CV-00518 (D. Colo. filed Feb. 27. 2013). This Court granted OSMRE's motion to sever and transfer the claims that pertained to the approval of the Wyoming mine expansions to the District of Wyoming, holding that severance

3

and transfer is "appropriate where such will advance the local interests championed by *Norbeck* and its ilk."[4] *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *1; *see Friends of the Norbeck,* 2010 WL 4137500. Significantly, this Court highlighted that "the value in having environmental claims litigated where their impacts resonate most deeply *eclipses any alleged judicial economy* in lumping together in one suit and one venue various locally charged claims." *Id*. (emphasis added).

Now, WildEarth Guardians once again seeks judicial review in Colorado of decisions affecting out-of-state coal operations. Echoing the failed rationale WildEarth Guardians relied upon in the previous cases, Petitioner contends venue is proper in Colorado because officials from OSMRE's Western Region Office in Denver, Colorado, participated in the mining plan approvals. Pet. ¶ 7. While it is true these officials participated, their participation in each decision was only one part of larger federal undertakings with roots in Wyoming, New Mexico, and Washington, D.C., and as explained before in other cases, this provides little basis for maintaining this case in Colorado in light of other considerations. The OSMRE Regional Director (who resides officially in Denver) formally recommended to the OSMRE Director (who resides in Washington) that the Assistant Secretary for Land and Minerals Management or Principal Deputy Assistant Secretary for Land and Minerals Management (both also in Washington) approve the mining plans at issue in this case. As to both the Wyoming mines and the New Mexico mine, the OSMRE Director in Washington then recommended to the Assistant Secretary (or Principal Deputy Assistant Secretary) that the mining plans be approved, and in

---

[4] Based on the strong local interest in having local cases decided locally, the Court also severed and transferred the claims that pertained to approval of the New Mexico and Montana mine expansions to their respective states. Respondent Intervenor San Juan Coal Company filed a motion to transfer and sever claims pertaining to New Mexico mine expansion. The Court ordered *sua sponte* that the claims involving the Montana mine expansions be transferred to the District of Montana. *Id*. at *3.

each instance, the Assistant Secretary (or Principal Deputy Assistant Secretary) executed the

mining plan approval. It should also be noted that numerous state and federal agencies in the

state where each mine is located undertook a host of administrative tasks, prerequisite to

OSMRE's review, as explained herein.

**B.      Background on Federal Coal Development**

In order to mine federal coal, an applicant must obtain a federal coal lease, a permit to

engage in surface coal mining and reclamation operations, and a mining plan approval. The BLM

leases federal coal under authority of the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C.

§ 181 *et seq*., and in accordance with NEPA requirements.[5] Following lease acquisition, an

applicant must obtain a permit under the Surface Mining Control and Reclamation Act of 1977

("SMCRA"). 30 U.S.C. § 1201 *et seq*.[6] Finally, on recommendation of OSMRE, the Assistant

Secretary of Land and Minerals Management must approve, disapprove, or modify a mining

plan, in accordance with the MLA. 30 U.S.C. § 207(c); *see also* 30 C.F.R. Part 746.

Approval of a mining plan by Interior, thus, marks the culmination of a multi-step

process for obtaining authorization to mine coal on federal lands. As illustrated below, this

process requires approval of, or concurrence by, numerous state and federal agencies.

1.      *Leasing under the MLA*

The MLA, 30 U.S.C. §§ 181-287, authorizes the Secretary to lease federal coal deposits.

*Id*. § 181. The BLM is the agency charged with issuing coal leases under the MLA. 235

Departmental Manual (DM) 1.1.K. BLM.  Leasing is generally handled by the respective BLM

State Office where the coal is located. 43 C.F.R 3425.1-1 (leasing on application). In this case,

---

[5] In addition, if the surface overlying federal coal is managed by another agency, such as the Forest Service, BLM must obtain the concurrence of that agency before leasing. 43 C.F.R. § 3425.3.

[6] As further explained below, either a state or OSMRE issues such permits.

besides BLM Colorado (Bowie No.2), the BLM offices involved are the Wyoming (Black Thunder and Antelope) and New Mexico (El Segundo) State Offices.  BLM's Wyoming State Office is located in Cheyenne, Wyoming, and its District Office is in Casper, Wyoming. The BLM offices involved in the approval of the El Segundo Mine include: BLM's District Office in Farmington, New Mexico, and its State Office located in Albuquerque, New Mexico

2.      *State permitting*

a.      *SMCRA permitting*

SMCRA establishes a program of cooperative federalism that allows the states to enact and administer their own programs to regulate surface coal mining and reclamation operations within their jurisdictions, and within limits established by federal minimum standards. In such states, the Secretary, acting through OSMRE, provides oversight of the state regulatory programs and has limited residual enforcement authority. *See* H.R. Rep. No. 95-218, at 57 (1977); *Hodel v. Va. Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 289 (1981). Under SMCRA, a state may assume primary jurisdiction ("primacy") over regulation of surface coal mining within its borders by obtaining the Secretary's approval of its proposed program. 30 U.S.C. § 1253. *See Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 289 (4th Cir. 2001); *see also In re Permanent Surface Mining Regulation Litig.*, 653 F.2d 514, 518 (D.C. Cir. 1981) ("Under a state program, the state makes decisions applying the national requirements of [SMCRA] to the particular local conditions of the state."). SMCRA therefore provides for either state or federal regulation to be exclusive within a state, but not both. 30 U.S.C. § 1253(a), 1254(a); *see also* 30 U.S.C. § 1276(e) ("[a]ction of the State regulatory authority pursuant to an approved State program shall be

subject to judicial review by a court of competent jurisdiction in accordance with State law….").[7]

A primacy state's authority does not automatically extend to federal lands within that state. *See, e.g.*, 30 U.S.C. § 1253(a) (excluding federal lands from State programs). Instead, SMCRA requires the Secretary to promulgate and implement a "Federal lands program" for surface coal mining and reclamation on federal lands. 30 U.S.C. § 1273; *see also* 48 Fed. Reg. 6912, 6912 (Feb. 16, 1983). SMCRA requires that the Federal lands program incorporate the requirements of any state program if the federal lands are located in a state with primacy. 48 Fed. Reg. 6912, 6912; *see also* 30 U.S.C. § 1273(b). In addition, SMCRA allows the Secretary to enter into cooperative agreements with primacy states for the regulation of surface coal mining and reclamation operations on federal lands. 30 U.S.C. § 1273(c).

All states involved in this action are primacy states. Wyoming and New Mexico both attained primacy in 1980. *See, e.g.*, 30 C.F.R. § 950.10 (Wyoming); 30 C.F.R. § 931.10 (New Mexico). As primacy states state law governs the issuance of surface mining permits in each state. *See, e.g.*, Wyoming Environmental Quality Act, WYO. STAT. ANN. § 35-11-101 *et seq*., and implementing regulations; New Mexico Surface Mining Act, N.M. STAT. ANN. §§ 69-25A-1 *et seq*. and implementing regulations. Thus, no state surface mining permits were approved in Colorado for the El Segundo Mine, the Black Thunder Mine or the Antelope Mine.

All states involved in this action also have entered into State-Federal cooperative agreements with OSMRE, in which each state involved was delegated broad authority to regulate surface coal mining and reclamation operations on federal lands within that state, including the

---

[7] OSMRE's role under SMCRA does not end once it has approved a state's program. SMCRA gives OSMRE ongoing authority to oversee the effectiveness of a state's implementation of its program. *See, e.g.,* 30 U.S.C. § 1271.

authority to review permit applications and issue permits on leased federal coal.  *See* 30 C.F.R. §

950.20 (codifying the OSMRE-Wyoming cooperative agreement); 30 C.F.R. § 931.30 (codifying

the OSMRE-New Mexico cooperative agreement). This delegation of authority, however, did not

and could not delegate the Secretary's duty "to approve mining plans on Federal lands."

30 U.S.C. § 1273(c); *see also* 30 C.F.R. § 745.13(i).

Because authority to approve mining plans rests solely with Interior, a surface mining

applicant must submit a Permit Application Package ("PAP") to both OSMRE and the SMCRA

state regulatory authority—i.e., either the Wyoming Department of Environmental Quality's

Land Quality Division ("DEQ") or the New Mexico Energy, Minerals and Natural Resources

Department ("EMNRD"). 30 C.F.R. § 950.20 at ¶ 6 (Wyoming); 30 C.F.R. § 931.30, Art. VII,

¶ 11 (New Mexico). Pursuant to the respective cooperative agreements, the states, as the

SMCRA permitting authorities, "assume[d] primary responsibility for the analysis, review, and

approval or disapproval of the permit application component of the PAP." 30 C.F.R. § 950.20

¶ 7(a) (Wyoming); 30 C.F.R. 931.30, Art. VII. ¶ 12 (New Mexico). These agreements provide

that Interior "concurrently carry out its responsibilities which cannot be delegated . . . ," which

includes mining plan approval under the MLA. 30 C.F.R. § 950.20 ¶ 7(b) (Wyoming), 30 C.F.R.

§ 931.30, Art. VII, ¶ 12 (New Mexico).

> b.    *Other state permits*

In addition to state surface mining permits, state agencies are also generally responsible

for issuing other environmental permits that the mines must obtain, including permits related to

air and water quality.  The State of Wyoming is delegated authority to issue National Pollutant

Discharge Elimination System ("NPDES") permits under the Clean Water Act and air quality

permits under the Clean Air Act.  New Mexico, in contrast, has delegated authority to issue air

quality permits under the Clean Air Act, but NPDES permits in New Mexico are issued by the U.S. Environmental Protection Agency.  None of these state permitting actions (or federal in the case of NPDES permits in New Mexico)  for the Wyoming or New Mexico mines took place in Colorado.

3.      *Mining plan recommendation/approval*

Once the respective Wyoming and New Mexico state agencies and BLM offices approved leasing and permitting activities—actions which solely occurred in those two states—OSMRE's Western Regional Office prepared a mining plan recommendation. It is only at this step that the first and only action took place in Colorado. Even then, the connection to Colorado for the Wyoming and New Mexico mines is tenuous. For instance, after conducting an independent review, OSMRE based its Finding of No Significant Impact ("FONSI") for the El Segundo Mine on the leasing environmental assessment ("EA") prepared by BLM's Farmington, New Mexico office. Similarly, OSMRE independently reviewed and adopted the environmental impacts statements ("EIS") prepared by BLM's District Office in Casper, Wyoming for both the Black Thunder Mine ("Wright Area Coal Lease Applications" Final EIS) and the Antelope Mine ("West Antelope II Coal Lease Application" Final EIS).[8] Thus, many of the most relevant NEPA documents relied upon to prepare the mining plan approvals were generated in the respective states where the mines are located. Once OSMRE's Western Regional Office completed a separate recommendation for each mining plan, it was then forwarded to the OSMRE Director in Washington, D.C. It was there that the OSMRE Director signed the Agency's final

---

[8] Notably, both of these EISs have survived judicial challenge by Petitioner for many of same deficiencies alleged in this case. *See WildEarth Guardians v. U.S. Forest Serv.*, 2015 WL 4886082 (D. Wyo. Aug. 17, 2015) (Wright Area Coal Lease Applications EIS challenge) and *Wildearth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir. 2013) (West Antelope II Coal Lease Application EIS challenge).

recommendation for each mining plan and forwarded it to the Assistant Secretary's office, also in Washington, D.C., for final decision.

## II.   ARGUMENT

Claims concerning mines located in Wyoming (Antelope Mine and Black Thunder Mine) and New Mexico (El Segundo Mine) should be severed and transferred to the judicial district where each mine is located because venue as to those claims is proper in the District of Wyoming and the District of New Mexico, respectively, and transfer would best serve the interests of justice and the convenience of the parties and any potential witnesses.

**A.     The Claims Against the Four Separate Mines Should be Severed Under Rule 21**

Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n motion, or on its own, the court may at any time, on just terms, add or drop a party" and "may also sever any claim against a party." Fed. R. Civ. P. 21. "[C]laims severed under Rule 21 become independent actions with separate judgments entered in each." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 n.8 (10th Cir.1991) (citing 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2387 at 277 (1971 & 1990 Supp.)). In *Chrysler Credit Corp.,* the Tenth Circuit explained that "where certain claims in an action are properly severed under Fed. R. Civ. P. 21, two separate actions result; a district court may transfer one action while retaining jurisdiction over the other." 928 F.2d at 1519 (citing *Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2nd Cir. 1968)).

Claims may be severed when, as here, they do not "arise out of the same transaction or occurrence" or "present some common question of law or fact," *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *2 (quoting *Preacher v. Wiley*, 2009 WL 6409350 at *2 (D. Colo. Nov. 20, 2009)); or when there is no "risk of inconsistent judgment" or "a judicial economy to be

gained by litigating all alleged claims in one suit," *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *2. Furthermore, the severance provision in Rule 21 "authorize[s] severance of a claim without a finding of improper joinder." *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *2 (citing to *Wyndham Associates*, 398 F.2d at 618; *Sporia v. Pennsylvania Greyhound Lines,* 143 F.2d 105, 105 (3d Cir. 1944); *Safeco Ins. Co. v. City of White House,* 36 F.3d 540, 545–46 (6th Cir. 1994)).

> 1.  *Severance is proper because none of the claims are part of the same transaction or occurrence and do not present a common question of law or fact*

Petitioner has raised claims challenging four independent decisions on four separate mines scattered among three states. Because the decisions are entirely independent of one another, having been set forth in four separate decision documents, none of the challenged decisions were part of the same transaction or occurrence. *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *2; *Preacher*, 2009 WL 6409350, at *2. Instead, each challenged decision involves separate, individualized circumstances implicating highly localized economic, energy, and environmental interests. Similar to the petition in *WEG OSMRE Mining Plan Case*, 2014 WL 503635, the Petition itself reflects a diversity of circumstances characterizing the four distinct transactions, particularly with regard to the different types of NEPA documents at issue (e.g., Environmental Impact Statements ("EIS"), Environmental Assessments ("EA"), Findings of No Significant Impacts ("FONSI"), Statements of NEPA Compliance), each of which is subject to different public participation requirements. This Court recently stated "a failure to involve the public for one type of NEPA documentation does not necessarily shed any light on whether the public was properly involved for a different type of NEPA documentation." *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *2.

11

Furthermore, each mining plan will be "reviewed upon its own customized administrative record," thus severance is proper because Petitioner's claims do not arise "out of the same transaction or occurrence" or "present some common question of law or fact." *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *2 (citing *Preacher*, 2009 WL 6409350, at *2). Given the uniqueness of the geographic tracts and operational details of the mining plans, the broad periods of years over which the mining plan approvals occurred, NEPA's varying requirements as set out above, and the diverse factual circumstances of each administrative proceeding, Petitioner cannot reasonably contend that its public participation claims arise from the same transaction. Accordingly, severance is appropriate under Fed R. Civ. P. 21.

2. *Severance will not substantially inconvenience Petitioner*

To determine whether severance is appropriate under Fed R. Civ. P. 21, courts also consider "'the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic.'" *Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 623 (D. Kan. 2003) (quoting *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.,* 918 F.Supp. 343, 350 (D.Kan.1996)). A court may also sever unrelated claims "when to do so would be in the interest of some of the parties." *Id*. If this case is severed, Petitioner may still be able to pursue its claims against the Federal Respondents in separate cases, and it would not be difficult, costly, or prejudicial to sever claims. Petitioner resides in New Mexico and thus will not be inconvenienced or prejudiced by litigating the case in the District of New Mexico. According to Petitioner's website, it maintains an office in Wyoming.[9] Regardless, "obtaining *pro hac vice* admission in Wyoming is a simple matter of an electronic

---

[9] *See* WILDEARTH GUARDIANS,
http://www.wildearthguardians.org/site/PageServer#.Vktxof_lu70 (last visited Nov. 17, 2015) (stating "[o]ffices also in…Wyoming").

filing." *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *3. Petitioner has done this before. *See, e.g.*, *WildEarth Guardians v. U.S. Forest Serv.*, 2015 WL 4886082 (D. Wyo. Aug. 17, 2015). Thus, on this ground as well, severance is appropriate.

   3.   *There is no judicial economy in litigating all of the alleged claims in one suit*

   "Whether judicial economy is served depends entirely upon the nature of the claims involved." *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *2. Here, Petitioner has lumped together several unrelated mining plan modifications which OSMRE separately approved. Judicial review for each mine will be based upon one of four independent administrative records applicable to that specific mine.[10] When there are such distinct circumstances and requirements for public participation underlying each of the challenged decisions at issue, it is impossible to ascertain what judicial economy exists as Petitioner cannot litigate the claims together in a meaningful way. *Id.* at *2-3; *see also Tab Express Int'l, Inc.*, 215 F.R.D. at 624 (finding that judicial economy and expedition would be best achieved through severance of complex patent-infringement claim). Accordingly, there is "nothing inherently problematic with carving up an environmental action involving multiple claims that implicate strong local interests in more than one geographic location." *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *3.

---

[10] Despite claims of a practice or pattern, Pet. ¶¶ 4, 97, Petitioner will need to tailor its arguments to each individual mine. *WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *2. ("Despite Petitioner's characterization of the suit as protesting a 'practice or pattern' of not involving the public, the petition does not present a facial challenge to the Federal Respondents practice and procedures but rather is an 'as applied' challenge to [four] separate decisions covering [four] separate mines, each of which will require the merits judge to review a separate and distinct administrative record.").

**B.      Each of the Severed Claims Should be Transferred to the Judicial District Encompassing the Mine Where the Claim Arose**

The Court's authority to transfer claims is conferred by 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court has broad discretion to resolve motions to transfer pursuant to 28 U.S.C. § 1404(a). *See Chrysler Credit Corp.*, 928 F.2d at 1515. In resolving motions to transfer, courts in this Circuit have followed a case-by-case approach, *id.* at 1516, exercising the discretion to transfer "according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964) (superseded by statute on other grounds); *see also Piper Aircraft v. Reyno*, 454 U.S. 235, 257-59 (1981). In sum, to justify transfer, a respondent must establish that: (1) petitioners could have originally brought the action in the proposed transferee district(s), in this case, the District of Wyoming and the District of New Mexico, *Van Dusen,* 376 U.S. at 622; and (2) the considerations of convenience and interest of justice weigh in favor of transfer, *see Chrysler Credit Corp.,* 928 F.2d at 1515; *WEG USFS South Porcupine Lease Case*, 2012 WL 1415378, at *2; *Friends of the Norbeck,* 2010 WL 4137500, at *2.

As Federal Respondents establish below, any connection between Petitioner, the controversy presented by claims pertaining to mines located in Wyoming and New Mexico, and the chosen forum – that is, the District of Colorado – is highly attenuated, thus favoring Federal Respondents' motion to sever and transfer.

1. *Petitioner's claims could have been brought originally in the judicial districts where the mines are located*

The only limitation on the Court's discretion to transfer a case is the requirement that the new forum be a "district or division where [the case] might have been brought." 28 U.S.C. § 1404(a). Where the case "might have been brought" is determined by reference to 28 U.S.C. § 1391(e)(1), which provides that in suits against agencies of the United States, venue is proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred [] or (C) the plaintiff resides . . . ." *Id.* Because the claims in this case arising on mines in Wyoming and New Mexico could have been brought originally in the district courts for the District of Wyoming and the District of New Mexico, respectively, transfer of Petitioner's claims to those courts is proper. *See WEG USFS South Porcupine Lease Case*, 2012 WL 1415378, at *2 (finding venue proper in Wyoming because lease at issue and majority of actions surrounding challenged ROD occurred in Wyoming).

a. Claims against Antelope Mine and Black Thunder Mine could have been brought in the District of Wyoming

Claims against Antelope and Black Thunder mining plan approvals could have been brought in the District of Wyoming because the mines lie entirely within the District of Wyoming and principal NEPA analyses supporting the mining plan approvals were conducted in Wyoming (along with a host of other administrative proceedings). Petitioner also might have brought suit in the District of Wyoming because OSMRE has an office in Casper and thus officially resides in Wyoming. For these reasons, claims concerning Antelope and Black Thunder mining plan approvals "might have been brought" in the District of Wyoming.

b.  <u>Claims against El Segundo Mine could have been brought in the District of New Mexico</u>

Petitioner could have properly brought claims against El Segundo Mine in the District of New Mexico because a "substantial part of the events or omissions giving rise to" the El Segundo Mine claims occurred in New Mexico, as the mine is located entirely within the District of New Mexico, and a substantial part of the analysis, recommendations, and documents relevant to the mine approval were generated in New Mexico. Further, Petitioner has its principal place of business in Santa Fe, and thus, officially resides in New Mexico, and OSMRE has an office in Albuquerque, and thus, officially resides in New Mexico as well. Because these claims could have been brought in the District of New Mexico, transfer is appropriate.

*2.  The interest of justice favors transfer*

The Tenth Circuit has identified nine factors to weigh in determining whether transfer is appropriate: (1) the petitioner's choice of forum; (2) the convenience and location of witnesses (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) the relative congestion of the docket; (7) conflict of laws issues; (8) the advantage of having a local court determine questions of local law; and, (9) all other considerations of a practical nature that make a trial easy, expeditious, and economical. *Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *WEG USFS South Porcupine Lease Case*, 2012 WL 1415378, at *2; *Friends of the Norbeck*, 2010 WL 4137500, at *3. Even though venue may be permissible in Colorado, claims concerning the Black Thunder Mine, the Antelope Mine and the El Segundo Mine should be transferred to Wyoming and New Mexico respectively, where the mines are located, where a great number of the operative facts occurred, and where the local interest is substantial.

16

a.   Petitioner's choice of forum is entitled to minimal consideration

It is well established that a petitioner's choice of forum receives little deference if the petitioner does not reside in the district. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1168 (10th Cir. 2010); *WEG USFS South Porcupine Lease Case*, 2012 WL 1415378, at \*3; *Friends of the Norbeck*; 2010 WL 4137500, at \*3; *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006); *Bailey v. Union Pac. R.R.*, 364 F. Supp. 2d 1227, 1230 (D. Colo. 2005). Here, Petitioner is headquartered in New Mexico, and although the Petition alleges that Petitioner has an office in Denver, there is no allegation or evidence that Denver is Petitioner's "principal place of business." *See Friends of the Norbeck*; 2010 WL 4137500, at \*3. As such, in considering a transfer of claims against the El Segundo Mine to the District of New Mexico, the Court should give even less weight to Petitioner's choice of forum than it normally would. *See Defs. of Wildlife v. Jewell*, Nos. 2:13-000039, 2013 WL 6179953, at \*5 (M.D. Tenn. Nov. 26, 2013) (citing to *Ryan v. Tseperkas*, 2008 WL 268716 at \*4-5 (E.D.N.Y. Jan.28, 2008) (finding that plaintiff's choice of form is entitled significantly less weight when plaintiff resides not in the transferor forum, but where the matter is sought to be transferred)).

Nor should a petitioner's choice of forum prevail in a weighing of the interest factors simply because OSMRE has an office in Denver. As the D.C. District Court has noted, naming a federal officer as a respondent "does not alone anchor venue." *Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 95 (D.D.C. 2009); *Airport Working Grp. v. United States Dep't of Def.*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (any role played by officials in D.C. was overshadowed by the fact that permitting process, including public comments, occurred in California); *see also Friends of the Norbeck*, 2010 WL 4137500, at \*3. Notably, most of the

state and federal agencies directly involved in the planning and analysis required to complete the

PAP, which formed the basis of OSMRE's recommendation to approve the mining plans, reside

officially in the states where the mines are located. Thus, taking into account "considerations of

convenience and justice," *Van Dusen*, 376 U.S. at 616, Wyoming is the most appropriate venue

for claims against Antelope Mine and Black Thunder Mine, and New Mexico is the most

appropriate venue for claims against El Segundo Mine. Accordingly, Petitioner's choice of

forum is "entitled to little weight." *WEG USFS South Porcupine Lease Case*, 2012 WL 1415378,

at *3 (citing to *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168).

> b.   The local interest favors transfer because Petitioner's claims involve disputes
> over the management of lands located entirely in Wyoming and New Mexico

Most importantly, claims against Antelope Mine, Black Thunder Mine, and El Segundo

Mine are matters of great local interest that should be adjudicated in the local forum. This Court

recently held that "it is axiomatic that '[t]here is a local interest in having localized controversies

decided at home.'" *WEG USFS South Porcupine Lease Case*, 2012 WL 1415378, at *3 (quoting

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947)). Further, "[l]and is a localized interest

because its management directly touches local citizens." *S. Utah Wilderness Alliance v. Norton*,

315 F. Supp. 2d 82, 88 (D.D.C. 2004) ("*SUWA*"). The strong interest in having local

controversies decided in the jurisdiction in which the land is located is "[o]ne of the most salient

factors" in determining whether the interest of justice favors transfer. *WildEarth Guardians v.

U.S. Fish & Wildlife Serv.*, No. 12-CV-3085-AP, 2013 WL 136204, at *3 (D. Colo. Jan. 9, 2013)

("*WEG FWS Gray Wolves Case*") (citing *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448

(1994)). For these reasons, in the coal mining context, this and other courts have recognized

"[t]he value in having environmental claims litigated where their impacts resonate most deeply."

*WEG OSMRE Mining Plan Case*, 2014 WL 503635, at *1; *see also Defs. of Wildlife*, 2013 WL

6179953, at *5 ("The relevant public interest factors weigh heavily in favor of transfer and, in particular, the principle that local controversies should be decided at home.").

This Court has likewise stated that "local interests in a dispute can be the 'most influential' factor supporting transfer, even where a case raises an issue that is of national importance." *WEG FWS Gray Wolves Case,* 2013 WL 136204, at *3 (citing to *Friends of the Norbeck,* 2010 WL 4137500, at *4). Thus, "when a dispute arises regarding a land management project that directly implicates the local economy, local regulatory agencies, and the local environment, it is common for such a dispute to be heard in the jurisdiction where the land is located." *WEG USFS South Porcupine Lease Case*, 2012 WL 1415378, at *3; *see, e.g.*, *Friends of the Norbeck,* 2010 WL 4137500, at *4 (transferring challenge to Forest Service wildlife project to South Dakota, where the project was located); *Sierra Club v. U.S. Dep't of State*, No. C 09-04086 SI, 2009 WL 3112102, at * 3 (N.D. Cal. Sept. 23, 2009) (noting that "environmental cases often provide a particularly strong basis for finding a localized interest in the region touched by the challenged action."); *SUWA*, 315 F. Supp. 2d at 88-89 (transferring to Utah a case challenging decision to allow sale of oil and gas leases on BLM-managed lands in Utah).

The residents of Wyoming and New Mexico have a "compelling interest . . . in having this localized controversy decided at home" because these claims involve land management located in Wyoming and New Mexico. *Trout Unlimited v U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996). "[S]uits such as this one, which involve [] environmental regulation and local wildlife – matters that are of great importance in the [state] – should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected'" are located. *Id.* at 19-20; *see also WEG USFS South Porcupine Lease Case*, 2012 WL 1415378, at *4 (finding that local interests "weigh heavily in favor of transfer" when "challenged project would have

19

substantial impacts on the local economy, and it is particularly relevant to the State of Wyoming"); *Friends of the Norbeck*, 2010 WL 4137500, at *4.

Petitioner's claims also raise economic issues for the State of Wyoming and the State of New Mexico, respectively, both in terms of revenue to the states and jobs for its citizens. If the Court were to vacate the mining plan approvals, mining could not occur on the federal coal covered by that mining plan, and thus an adverse decision could imperil thousands of jobs in Wyoming and New Mexico. Such a controversy should be decided at home, in Wyoming and New Mexico. *See Defs. of Wildlife*, 2013 WL 6179953, at *6 (holding that there is "significant local interest" in a lawsuit challenging coal mines decided where the mines are located, in part, because "[i]t is there where a vacation of the permits would have the most impact. . . .'"); *Nat'l Wildlife Fed'n v. Alexander*, 458 F. Supp. 29, 30-31 (D.D.C. 1978) (transferring a challenge to a permit for construction of a port terminal in South Carolina to the local district court, based in part on a finding that the decision will "impact primarily upon South Carolina").

Finally, the presumption that localized controversies should be decided in the forum where the project is located has particular resonance where, as here, the State of Wyoming and the State of New Mexico serve as the surface mining permit regulatory authorities within their borders. Further, the State of Wyoming's Motion to Intervene underscores the localized nature of, and interest in, the claims challenging the Wyoming mines. *Friends of the Norbeck*, 2010 WL 4137500, at *4.

Thus, for all these reasons, localized interest in the Wyoming and New Mexico mine approvals favors transfer to the District of Wyoming and the District of New Mexico, respectively.

c. The other *Chrysler Credit Corp* factors are neutral or support transfer

The remaining factors for deciding a venue motion are either neutral or support the proposed transfer. With respect to the convenience of witnesses, Federal Respondents note that the claims in this case will be reviewed under the Administrative Procedure Act on the basis of an administrative record. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1574-75 (10th Cir. 1994); *WEG FWS Gray Wolves Case,* 2013 WL 136204, at *4-5; *Friends of the Norbeck*, 2010 WL 4137500, at *3. "Ordinarily, in a record review case, there would be no need for witnesses or other sources of proof." *Friends of the Norbeck*, 2010 WL 4137500, at *3. As a result, convenience of witnesses "is largely irrelevant." *WEG FWS Gray Wolves Case,* 2013 WL 136204, at *5; *see also Trout Unlimited*, 944 F. Supp. at 18 (convenience of witnesses has "less relevance"); *SUWA*, 315 F. Supp. 2d at 88 (not considering convenience to witnesses where court's review would be based upon administrative record and parties agreed witnesses would not be necessary). Nonetheless, the convenience of witnesses is not completely irrelevant. While witnesses are unlikely to be needed for resolution of claims against Antelope, Black Thunder, and El Segundo mines on the merits, declaration or court testimony may be required, for example, to attest to harm which might flow from the injunctive relief Petitioner seeks. *See* Petition at 37 ("Prayer for Relief"). Finally, the court in *Chrysler Credit Corp* identified "other considerations of a practical nature that make a trial easy, expeditious, and economical" as a factor to be weighed in determining whether to transfer claims. *Chrysler Credit Corp.,* 928 F.2d at 1516. As to the relative congestion of dockets, this Court ruled that there was no material difference between the Districts of Colorado and Wyoming. *WEG USFS South Porcupine Lease Case*, 2012 WL 1415378, at *3) (holding that

"the relative congestion of dockets is a wash and has no sway"). Thus, this factor is neutral with respect to the claims against mines located in Wyoming.

Notably, regarding the Black Thunder Mine, in particular, the District Court of Wyoming has recently decided a case regarding the exact same EIS that is implicated by the current lawsuit. *WildEarth Guardians v. U.S. Forest Serv.*, 2015 WL 4886082 (D. Wyo. Aug. 17, 2015). Thus, transfer of this claim, in particular, will increase judicial economy. *Defs. of Wildlife*, 2013 WL 6179953, at *6 ("[W]hile 'all federal courts are presumed to be equally familiar with the law governing federal statutory claims,' it is not insignificant that [Petitioners] have previously brought litigation in the [transferee Court District] regarding OSM[RE]'s permitting for the [same mine] . . . [T]he point remains that the [transferee District Court] presumably has at least some institutional knowledge about the [mines at issue] and OSM[RE] permitting relating thereto.") (quoting *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009)). In addition, the District of New Mexico is currently reviewing a related case with the same parties, *WildEarth Guardians v. Klein*, No. 14-cv-112 (D.N.M. filed Feb. 7, 2014). Because of this, transfer of the Wyoming and New Mexico claims to their respective districts would promote judicial economy.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Federal Respondents' motion to: (1) sever claims pertaining to Antelope Mine and Black Thunder Mine and transfer them to the District of Wyoming, and (2) sever claims pertaining to El Segundo Mine and transfer them to the District of New Mexico.

Respectfully submitted, November 25, 2015, by

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division

_____/s/ Jason A. Hill_____
Jason A. Hill
DC Bar # 477543
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-0663
TEL: (202) 514-1024
FAX: (202) 305-0506
e-mail: jason.hill@usdoj.gov

**Attorney for Federal Respondents**

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 25, 2015, I electronically filed the attached MOTION TO SEVER AND TRANSFER AND MEMORANDUM OF SUPPORT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following parties:

**Attorney for Petitioners:**

Samantha Ruscavage-Barz:  sruscavagebarz@wildearthguardians.org
Sarah McMillan:  smcmillan@wildearthguardians.org


                                   */s/ Jason A. Hill*_____
                                 Jason A. Hill