**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02026-WYD

WILDEARTH GUARDIANS,

    Petitioner,

v.

SALLY JEWELL, in her official capacity as U.S. Secretary of the Interior,
U.S. DEPARTMENT OF THE INTERIOR, and
U.S. OFFICE OF SURFACE MINING AND RECLAMATION

    Federal Respondents.

**FEDERAL RESPONDENTS' REPLY TO PETITIONER'S RESPONSE TO FEDERAL RESPONDENTS' MOTION TO SEVER AND TRANSFER CLAIMS**

**INTRODUCTION**

Petitioner's claims challenging multiple out-of-state coal mining decisions should be severed and transferred to the districts where the mines are located.[1] Specifically, Federal Respondents request that this Court sever claims pertaining to Antelope Mine and Black Thunder Mine and transfer them to the District of Wyoming, and that it sever claims pertaining to El Segundo Mine and transfer them to the District of New Mexico. This Court has consistently severed and transferred similar claims from this Petitioner involving out-of-state mines, *see* ECF No. 26 at 2-5, and it did so again most recently on March 1, 2016. *See WildEarth Guardians v.*

---

[1] WildEarth Guardians ("WEG") challenges four distinct decisions made over a three-year period, each with its own separate administrative record. Three of the four challenged mining approval plans pertain to mines located outside Colorado—two are located in Wyoming (specifically, Antelope and Black Thunder), and one is located in New Mexico (specifically, El Segundo). ECF No. 1 at ¶ 3. Petitioner contends the four plan approvals violate the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 §§ 4321-4347, and assert claims pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

*Jewell*, No. 15-CV-01984-REB, 2016 WL 796189 (D. Colo. Mar. 1, 2016) ("*Flat Canyon Case*"). The same relief is merited here.

Petitioner responds that its claims reflect a "pattern and practice" of violating NEPA, and it argues on that basis that its claims should be heard in a single district. But those claims address four separate, discrete, and final agency actions. *See also* ECF No. 42 at 7 (conceding that Petitioner's claims arise from four separate, unrelated transactions). A court will be required under the APA to review a separate and distinct administrative record for each of the four mines at issue, 5 U.S.C. § 706, and each administrative record will reflect unique facts pertaining to the corresponding individual mine. *See, e.g.*, ECF Nos. 27, 32, 34 (describing unique facts corresponding to each decision). Petitioner, therefore, can articulate no valid basis for denying the requested relief; its "pattern and practice" argument ignores the unique nature of each challenged action, in addition to being inconsistent with the APA's prohibition on programmatic challenges.

Finally, Petitioner's recently stated intent "to move for a preliminary injunction to temporarily cease mining in the areas covered by the challenged mining plans" further supports transfer of the claims related to the out-of-state mines, because such a motion would likely require local witness testimony. ECF No. 48-4. *See also* ECF Nos. 48, 48-1 – 48-5.

## BACKGROUND

This case arises from four separate decisions, made at four separate times, and concerning mines located in three different states. ECF No. 1 at 20-27. Each of these separate decisions are briefly described below.

*Antelope Mine, Wyoming*

On November 26, 2013, the Assistant Secretary, Land and Minerals Management ("ASLM") located in Washington, D.C., approved a mining plan modification for the Antelope Mine in Wyoming. The Office of Surface Mining Reclamation and Enforcement ("OSMRE"), Western Region Office, participated as a cooperating agency in the preparation of an environmental impact statement ("EIS") prepared by the Bureau of Land Management's ("BLM") District Office in Casper, Wyoming for the Antelope Mine ("West Antelope II Coal Lease Application" Final EIS). In support of its recommendation to the ASLM, OSMRE independently reviewed and adopted that EIS. OSMRE posted the EIS's Executive Summary and OSMRE's Statement of NEPA Adoption and Compliance on its website. *See* http://www.wrcc.osmre.gov/programs/federalLands/NEPA.shtm.

*El Segundo Mine, New Mexico*

On May 16, 2014, the ASLM approved a mining plan modification for the El Segundo Mine in New Mexico. OSMRE participated as a cooperating agency in the preparation of the leasing environmental assessment ("EA") prepared by the BLM's Farmington, New Mexico Office. After conducting an independent review, OSMRE adopted the EA and issued a Finding of No Significant Impact ("FONSI") a few months after the BLM completed its EA and issued its leasing decision. OSMRE posted its FONSI and the ASLM's mining plan modification decision document on its website. *See* http://www.wrcc.osmre.gov/programs/federalLands/NEPA.shtm.

*Bowie No. 2 Mine, Colorado*

On March 16, 2015, the ASLM approved a mining plan modification for the Bowie No. 2 Mine in Colorado. OSMRE participated as a cooperating agency in the preparation of an EA

prepared by the BLM's Uncompahgre Field Office in Colorado. After conducting an independent review, OSMRE adopted the EA and issued a FONSI for the Bowie No. 2 Mine. On April 2, 2015, less than a month after the ASLM's decision, OSMRE posted its FONSI and the ASLM's mining plan modification decision document on its website. *See* http://www.wrcc.osmre.gov/programs/federalLands/NEPA.shtm.

*Black Thunder Mine, Wyoming*

On April 18, 2015, the ASLM approved a mining plan modification for the Black Thunder Mine in Wyoming. OSMRE participated as a cooperating agency in the preparation of an EIS prepared by BLM's District Office in Casper, Wyoming for the Black Thunder Mine ("Wright Area Coal Lease Applications" Final EIS). In support of its recommendation to the ASLM, OSMRE independently reviewed and adopted that EIS. On May 18, 2015, approximately a month after the ASLM's approval, OSMRE posted the ASLM's mining plan decision document, the EIS's Executive Summary, the federal mining plan approval map and OSMRE's Statement of NEPA Adoption and Compliance on its website. *See* http://www.wrcc.osmre.gov/programs/federalLands/NEPA.shtm.

## ARGUMENT

This Court has repeatedly rejected WildEarth Guardians' attempts to make this district its preferred venue for challenging federal coal decisions, regardless of mine location. *WildEarth Guardians v. U.S. Office of Surface Mining Reclamation & Enf't*, No. 1:13-CV-00518, 2014 WL 503635 at *2-3 (D. Colo. Feb. 7, 2014) ("*Colowyo/Trapper Case*") (severing and transferring claims concerning mines in New Mexico, Montana and Wyoming); *see also WildEarth Guardians v. U.S. Forest Serv.*, No. 1:11-CV-03171-AP, 2012 WL 1415378 (D. Colo. Apr. 24, 2012) ("*Wright Area Leasing Case*") (transferring claims involving leasing of federal coal lands

4

in Wyoming). This Court recently reaffirmed its previous rulings, by transferring yet another case brought by this Petitioner challenging another decision for an out-of-state mine. *See Flat Canyon Case*, 2016 WL 796189 (transferring claims concerning a mine in Utah). The result should be the same here.

### I. Petitioner's Claims Should Be Severed.

In seeking to sever the claims concerning the Wyoming and New Mexico mines, Federal Respondents asserted that severance was proper on three grounds: (1) none of the claims are part of the same transaction or occurrence, nor do they present a common question of law or fact; (2) Petitioner will not be substantially inconvenienced by severing and transferring these cases to the districts where the mines are located; and (3) there is no judicial economy in litigating all the alleged claims in one suit. For the most part, Petitioner has either conceded or not responded to Federal Respondents' bases for severing these claims.

Claims are properly severed under Rule 21 when they do not "arise out of the same transaction or occurrence." *Colowyo/Trapper Case*, 2014 WL 503635 at *2 (quoting *Preacher v. Wiley*, No. 09-cv-00278-CMA-MEH, 2009 WL 6409350 at *2 (D. Colo. Nov. 20, 2009)). Here, Petitioner admits its "claims arise from four transactions . . . rather than a single transaction." ECF No. 42 at 7.[2]

Claims may also be properly severed under Rule 21 when they do not "present some common question of law or fact." *Colowyo/Trapper Case*, 2014 WL 503635 at *2 (D. Colo. Nov. 20, 2009)). But there are no common questions of law or fact among the four independent decisions challenged in this case. Instead, Petitioner attempts to explain that it sought to lump its

---

[2] Further, Petitioner attaches not just one, but all four final decisions it seeks to challenge in this suit, to its response. *See* ECF Nos. 42-1 through 42-4.

mine-specific claims together so as to avoid the result in *Colowyo/Trapper* by contending that the four decisions demonstrate a "pattern and practice" of approving mining plans without complying with NEPA. *See* ECF No. 42 at 11-12.

To support its pattern-and-practice theory, Petitioner alleges that there are similar issues regarding OSMRE's (1) "failure to provide any public notice of its approvals,"[3] (2) "wholesale adoption of other agencies' NEPA documents without evaluating the adequacy of those documents," and (3) "failure to address the potentially significant environmental effects of coal mining at the four mines covered by the challenged Mining Plan." ECF No. 42. However, these broadly-stated claims are hardly unique to this case.[4] Under Petitioner's logic, virtually all NEPA claims against a given agency can be brought in one action. Public notice, public participation, failure to take a "hard look," and lack of NEPA analysis are all common claims that can be found in almost every NEPA case. These type of claims are brought by a significant number of parties asserting NEPA claims; and simply alleging broad violations of this nature cannot serve as a basis for lumping together challenges to unrelated and geographically dispersed mines. Generalized allegations cannot withstand Rule 21 severance. *See Colowyo/Trapper*, 2014 WL 503635, at *2.

Each decision challenged in this case involves separate, individualized circumstances implicating highly localized economic, energy, and environmental interests that are independent of one another. Thus, Petitioner's claims will need to be determined on a mine-by-mine basis

---

[3] Petitioner's attempt to present a common question of fact as to an alleged practice of only placing NEPA documents for mining plans on a shelf in OSMRE's Denver office without any other public notice, ECF No. 42 at 8, is factually wrong because these decisions were posted to OSMRE's website. *See* http://www.wrcc.osmre.gov/programs/federalLands/NEPA.shtm.

[4] Indeed, as Petitioner is quick to point out, "the only difference between [an earlier case it brought] and this case is the specific mining plans at issue." ECF No. 42 at 5.

after separately examining each administrative record for each individual decision. Even a cursory review of the intervenor's proposed responses illuminates the many nuances of each decision for each mine, and why Petitioner's attempt should fail. *See, e.g.*, ECF Nos. 27, 32, 34. For example, evidence has already been presented in the context of the El Segundo mine located in Petitioner's home state of New Mexico that shows that Petitioner not only received notice, but also commented on and appealed the decision to the Interior Board of Land Appeals. *See e.g.*, ECF No. 32 at 5. But this information is not helpful in determining any notice that may have been provided in the other three decisions challenged in this suit. Moreover, despite claiming that Federal Respondents' motion would require severing "portions" of claims, ECF No. 42 at 12, and "There are no Wyoming . . . 'claims' for the Court to Sever," Petitioner ignores the simple fact that Claim Four pertains exclusively to the two mines located in Wyoming. *See* ECF No. 1 at 34-35. There is no common question of law or fact.

Finally, Federal Respondents asserted that Petitioner would not be substantially inconvenienced by severance because (1) it resides in New Mexico and (2) it maintains an office in Wyoming, and may seek *pro hac vice* admission there. ECF No. 26 at 12-13. Petitioner does not make any attempt to argue that New Mexico would be an inconvenient forum for it to litigate its claims against the El Segundo mine. Nor does Petitioner dispute that it maintains an office in Wyoming and that "obtaining *pro hac vice* admission in Wyoming is a simple matter of an electronic filing." *Colowyo/Trapper*, 2014 WL 503635 at *3. Instead, Petitioner only maintains that it will be "difficult," but not impossible, for it to find local counsel in Wyoming.

This Court should not be persuaded by Petitioner's assertion that severance would cause it to incur additional expenses or litigation delays. This Court should not weigh those factors heavily when the effects were foreseeable by Petitioners. After all, these results are largely

7

attributable to Petitioner's own choices in prosecuting its claims, and are especially misplaced given this Court's consistent transfer of similar mining challenges brought by this Petitioner.

When considering a motion to sever courts consider "'the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic.'" *Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 623 (D. Kan. 2003) (quoting *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.,* 918 F.Supp. 343, 350 (D.Kan.1996)). Those factors weigh in favor of severance here. Moreover, if this case is severed, Petitioner may still pursue its claims against the Federal Respondents in separate cases; and it would not be difficult, costly, or prejudicial to sever claims. Petitioner has not made a showing of substantial prejudice that should prevent severance and transfer generally; moreover, any inconvenience from severance would be a result of Petitioner's insistence on pursuing a litigation strategy that this Court has already rejected on numerous occasions. Accordingly, the claims concerning the Wyoming and New Mexico mines should be severed from this case.

## II.     The Interest of Justice Weighs in Favor of Transfer

Claims concerning the Black Thunder Mine, the Antelope Mine and the El Segundo Mine should be transferred to Wyoming and New Mexico respectively. To justify transfer, a respondent must establish that: (1) a petitioner could have brought the action in the proposed transferee district(s); and (2) the considerations of convenience and interests of justice weigh in favor of transfer. *See* ECF No. 26 at 14. **"**[Petitioner] concedes that it could have challenged the Mining Plans for mines in Wyoming and New Mexico in those districts." ECF No. 42 at 6. Thus, to justify transfer, Federal Respondents' focus of analysis is on the second prong.

As previously discussed, the Tenth Circuit has identified nine factors to weigh in determining whether transfer is appropriate. ECF No. 26 at 16. And this Court's most recent

decision in *Flat Canyon* is particularly instructive in weighing those factors. Similar to the circumstances in that case, most of the factors here are "either a wash or are irrelevant," but three factors warrant further discussion—Petitioner's choice of forum, the advantage of having local courts decide local controversies, and the accessibility of witnesses and other sources of proof. *Flat Canyon Case*, 2016 WL 796189, at *2.

Faced with very similar claims and circumstances, the Court in the *Flat Canyon Case* found that WildEarth Guardians' choice of Colorado as a forum was not entitled to deference because it was not headquartered in Colorado (despite having an office there), and because "the land use decisions in question are decisions about land use in Utah, not Colorado." *Id*. Following this Court's reasoning, Petitioner's forum choice in the instant litigation should not be entitled any more deference than its choice in *Flat Canyon Case*.

Moreover, while Petitioner attempts to limit the analysis of the local interest factor to questions of local law, ECF No. 42 at 20-21, as this Court recently explained to WildEarth Guardians: "I find that the local interest factor is broader than just questions of local law.[5] This factor encompasses the important interest in having local controversies decided where the controversy exists." *Flat Canyon Case*, 2016 WL 796189, at *2. In addition, this Court clarified, "As compared to *forum non conveniens*, § 1404 provides a more relaxed standard for transfer and permits the district court greater discretion to transfer." *Id*. (internal citation omitted).

The claims against Antelope Mine, Black Thunder Mine, and El Segundo Mine are matters of great local interest that should be adjudicated in the local forum. As this Court has

---

[5] Petitioner incorrectly asserts that "no party's attorneys live or work in Wyoming," yet this statement ignores the fact that counsel for Wyoming maintains offices in Wyoming, ECF No. 27 at 3, and upon information and belief also resides in Wyoming. It further ignores the fact that counsel for Petitioner maintains offices in New Mexico, where the El Segundo Mine is located.

already held: "it is axiomatic that '[t]here is a local interest in having localized controversies decided at home.'" *Wright Area Leasing Case*, 2012 WL 1415378 at *3 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947)). The strong interest in having local controversies decided in the jurisdiction in which the land is located is "[o]ne of the most salient factors" in determining whether the interest of justice favors transfer. *WildEarth Guardians v. U.S. Fish & Wildlife Serv.*, No. 12-CV-3085-AP, 2013 WL 136204, at *3 (D. Colo. Jan. 9, 2013) ("*Gray Wolves Case*") (citing *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994)). Likewise, this Court has stated that "local interests in a dispute can be the 'most influential' factor supporting transfer, even where a case raises an issue that is of national importance." *Gray Wolves Case,* 2013 WL 136204, at *3 (citing to *Friends of the Norbeck,* 2010 WL 4137500, at *4). For these reasons, in the coal mining context, this and other courts have recognized "[t]he value in having environmental claims litigated where their impacts resonate most deeply." *Colowyo/Trapper*, 2014 WL 503635, at *1; *see also Defs. of Wildlife v. Jewell*, No. 2:13–CV-39, 2013 WL 6179953, at *5 (M.D. Tenn. Nov. 26, 2013) ("The relevant public interest factors weigh heavily in favor of transfer and, in particular, the principle that local controversies should be decided at home.").

Finally, Petitioner's threat of moving for a preliminary injunction makes it more likely that witnesses may to be required. "For the convenience of parties and *witnesses*, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C.A. § 1404. "Ordinarily, in a record review case, there would be no need for witnesses or other sources of proof." *Norbeck*, 2010 WL 4137500, at *3. *See also* ECF No. 26 at 21. However, since date that this motion was filed, Petitioner has separately threatened to move for preliminary injunctions against each of the four mines. *See*

ECF No. 48. When deciding to issue a preliminary injunction, an analysis of the balance of harms must occur, which more directly raises the question of whether local witness testimony may be required. Potential witnesses, who may be needed to describe the harms related to the direct effects of a preliminary injunction, are most likely to be situated in the states where the mines are located.  *See e.g.* ECF No. 32-1 at ¶¶14, 15 (for the last two years: over $9 million in royalties paid to New Mexico; over $11 million paid in local taxes; over $37 million paid in payroll to employees living in New Mexico). Severance and transfer is even more desirable in a situation where four sets of potential witnesses may have to testify for a decision on a preliminary injunction for each mine.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Federal Respondents' motion to: (1) sever claims pertaining to Antelope Mine and Black Thunder Mine and transfer them to the District of Wyoming, and (2) sever claims pertaining to El Segundo Mine and transfer them to the District of New Mexico.

Dated: April 11, 2016.

          Respectfully Submitted,

          JOHN C. CRUDEN
          Assistant Attorney General
          Environment and Natural Resources Division
          */s/ Jason A. Hill*
          JASON A. HILL
          DC Bar # 477543
          U.S. Department of Justice
          Environment & Natural Resources Div.
          Natural Resources Section
          P.O. Box 7611
          Washington, D.C. 20044-7611
          Telephone: 202-514-1024
          Facsimile: 202-305-0506

          **Attorney for Federal Respondents**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 11, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record.

　　　　　　　　　　　　　　　　　___*/s/ Jason A. Hill*_____

　　　　　　　　　　　　　　　　　JASON A. HILL